IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D.P., a minor by his p/n/g/, CRISTINE AND DAVID PAGAN, | : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | NO. 19-5799 |
| SCHOOL DISTRICT OF PHILADELPHIA, et al., | : : : | |
| Defendants. | : : | |

**ORDER**

**AND NOW**, this __28th__ day of October 2020, upon consideration of Defendants Francine Locke, School District of Philadelphia, Kate Sylvester, and Watson T. Comly Elementary School's Motion to Dismiss (Doc. 5) and Plaintiff's Reply in Opposition (Doc. 12), **IT IS HEREBY ORDERED AND DECREED** that Defendants' Motion is **GRANTED IN PART AND DENIED IN PART.**[i] The Court **GRANTS** Defendants' Motion to Dismiss Count II and **DENIES** Defendants' Motion to Dismiss Counts I and III.

Upon consideration of Plaintiff's Notice of Non-Opposition (Doc. 14), **IT IS HEREBY ORDERED AND DECREED** that Defendants City of Philadelphia and Caroline Johnson's Motion to Dismiss (Doc.13) is **GRANTED**.

Upon consideration of Defendant Michael Gruman's Motion to Dismiss (Doc. 15) and Plaintiff's Reply in Opposition (Doc. 16), **IT IS HEREBY ORDERED AND DECREED** that Defendant's Motion is **GRANTED**.

**BY THE COURT:**

**/s/ Petrese B. Tucker**

_____
**Hon. Petrese B. Tucker, U.S.D.J.**

1

---

[i] Before the Court is Defendants Francine Locke, School District of Philadelphia, Kate Sylvester and Watson T. Comly School's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendant Gruman's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     FACTUAL BACKGROUND

In the fall of 2016, Plaintiff D.P. ("Minor Plaintiff") began attending Watson T. Comly Elementary School ("Comly Elementary School"), a public elementary school created, administered and managed by Defendant School District of Philadelphia. Compl. ¶¶ 46, 50, ECF No. 1. Defendant Comly Elementary School was constructed prior to the ban on interior lead-based paint in 1978. Compl. ¶ 47. As early as April of 2017, Minor Plaintiff's kindergarten teacher observed that Minor Plaintiff had a habit of placing non-food items into his mouth. Compl. ¶ 51. In the fall of 2017, Minor Plaintiff's first grade teacher observed Minor Plaintiff eating paint chips that had fallen from the ceiling of Classroom 202 at Watson T. Comly. Compl. ¶ 53. In November 2017, Minor Plaintiff's parents, Christine and David Pagan ("Plaintiffs" when referred to alongside D.P.), were notified that he was observed eating paint chips. Compl. ¶ 54. Thereafter, Minor Plaintiff began receiving medical treatment. Compl. ¶ 54. On November 13, 2017, Minor Plaintiff was found to have a blood lead level of 46 micrograms of lead per deciliter of blood and was admitted to St. Christopher's Hospital for Children to treat lead toxicity. Compl. ¶¶ 56–57. Minor Plaintiff's physicians notified Comly Elementary School officials of Minor Plaintiff's lead test results. Compl. ¶ 58.

On November 15, 2017, school officials hired Criterion Laboratories, Inc., to perform a lead-based paint inspection on Minor Plaintiff's classroom and the bathroom of Classroom 104, which Minor Plaintiff used the prior year. ¶ 59. Both locations tested positive for lead-based

paint in concentrations above standards set by the U.S. Department of Housing and Development and the City of Philadelphia's Department of Health. Compl. ¶ 60.

On November 15, 2017, Defendant Caroline Johnson ("Johnson"), Acting Deputy Commissioner of the Philadelphia Department of Health, was informed by Defendant Francine Locke ("Locke"), Philadelphia School District Environmental Director, that a first grader at Comly Elementary School was suffering from lead poisoning. The Defendants further learned that the student had been observed eating paint chips at the school, that according to Defendant school principal Kate Sylvester ("Sylvester") the student was "displaying behavioral issues that could be associated with lead exposure," and that the entire first grade class of students had been relocated to a different room. Compl. ¶¶ 61–63. When asked by Defendant Locke whether to share this information with the community, Defendant Johnson allegedly replied, "I wouldn't notify the community yet. Not really clear if there is a problem." Compl. ¶ 64.

On November 17, 2017, school officials drafted a letter to inform parents of the presence of toxic lead in the Comly Elementary School, which was approved by the Philadelphia Department of Public Health. Compl. ¶¶ 65–66. Defendant Locke, and other school officials, decided not to send the letter to parents, but instead to use its contents as talking points for Defendant Sylvester's routine parents meeting the following week, which would allow the school to gauge "parent reaction" to the presence of lead. Compl. ¶¶ 67–68. It is unknown what information, if any, was provided to parents at their meeting with Defendant Sylvester. Compl. ¶ 71. On November 27, 28, and 29, 2017, Criterion Laboratories, Inc. allegedly performed an additional inspection of the entire interior of Comply Elementary School, which found the presence of lead paint and/or paint dust in 71 areas of the school. Compl. ¶¶ 72–73.

In support of Plaintiffs' claim against Defendant Michael Gruman ("Gruman"), Plaintiffs allege that Defendant Gruman owned the residential property at 11890 Bustleton Avenue, Philadelphia, Pennsylvania, which Minor Plaintiff's parents began renting on April 1, 2013. Compl. ¶¶ 75–77. Plaintiffs further allege that Defendant Gruman "knew or should have known [that the residential property] was contaminated with toxic lead-based paint . . ." and had actual or constructive knowledge that a child under the age of seven resided or spent substantial time at this residence. Compl. ¶¶ 10, 79.

On December 10, 2019, Plaintiffs filed this action in the U.S. District Court for the Eastern District of Pennsylvania. *See* Compl. In the Complaint, Plaintiffs assert that Defendants School District of Philadelphia, Sylvester, and Comly Elementary School (the "School District Defendants"), and Defendants the City of Philadelphia, and Johnson (the "City Defendants") are liable under 42 U.S.C. § 1983 for creating or exacerbating Minor Plaintiff's dangerous exposure to lead-based paint, thereby violating Plaintiffs' substantive due process rights. Compl. ¶¶ 82–99. Additionally, Plaintiffs allege common law negligence and/or recklessness claims against the School District Defendants, the City Defendants, and Defendant Gruman for allowing Minor Plaintiff to occupy buildings contaminated with lead-based paint. Compl. ¶¶ 100–115.

On February 11, 2020, the School District Defendants filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss, ECF No. 5. On March 6, 2020, Plaintiffs filed a response in opposition to the School District's motion to dismiss. Resp., ECF No. 12. On March 18, 2020, the City Defendants filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss, ECF No. 14. On April 1, 2020, Plaintiffs filed a notice of non-opposition to the City's motion to dismiss. Notice of Non-Opposition, ECF No. 14. On April 10, 2020, Defendant Gruman filed a motion to dismiss for

4

failure to state a claim under Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss., ECF No. 15. On April 24, 2020, Plaintiff filed a response in opposition to Defendant Gruman's motion to dismiss. Resp., ECF No. 16.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint when factual allegations are not sufficient to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). A court must accept well-pleaded facts as true but disregard legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). A court must also determine whether facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." *Id* at 211. Determining whether a complaint has raised a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

## III. DISCUSSION

### A. Plaintiffs Have Adequately Plead a State-Created Danger Claim Against School District Defendants.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts which, if true, establish that (1) defendants acted under color of state law and (2) defendants deprived plaintiff of a federal constitutional or statutory right. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). Generally, "the state has no affirmative obligation to protect its citizens from the violent acts of private individuals," although "courts have recognized two exceptions to this rule": the "special relationship" and the "state-created danger" exceptions. *Id.*

5

Plaintiffs bring a civil rights claim under 42 U.S.C. § 1983 alleging that the School District Defendants' conduct subjected Minor Plaintiff to a state-created danger in violation of his Fourteenth Amendment substantive due process rights. Compl. ¶¶ 82–93. The state-created danger doctrine "operates as an exception to the general rule" that "the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). In order to successfully plead the state-created danger exception, Plaintiffs must establish the following four elements: "(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed." *Id.*

School District Defendants allege that Plaintiffs have failed to establish a substantive due process claim against them. Defs.' Mot. Dismiss 9. School District Defendants further allege that Plaintiffs have failed to meet the special relationship or a state-created danger exceptions. Defs.' Mot. Dismiss 11–12. The School District Defendants contend that Minor Plaintiff does not fulfill the special relationship exception because the "Third Circuit has repeatedly held that no special relationship exists between school children and the state[.]" Defs.' Mot. Dismiss 11–12 (citing *Stanford v. Styles*, 456 F. 3d 298, 304 (3d Cir. 2006)). The School District Defendants allege that Plaintiffs also fail to plead the state-created danger exception because Minor Plaintiff does not satisfy at least the second and fourth prongs of the state-created danger test. Defs.' Mot. Dismiss 12.

Plaintiffs do not contest Defendants' argument against a special relationship in their response, but argue that they have plead plausible facts to support the four elements of a state-

6

created danger claim. Pl.'s Resp. to Defs.' Mot. Dismiss 9–10. Plaintiffs argue that the second element is satisfied because the School District's action of placing Minor Plaintiff, who had a known history of placing non-food items into his mouth, at a desk beneath a spot in the ceiling where lead-based paint chips were falling, rendered Minor Plaintiff more vulnerable to dangerous lead toxicity than Minor Plaintiff otherwise would have been. Pl.'s Resp. to Defs.' Mot. Dismiss 11–12. As to the fourth element of the state-created danger exception, Plaintiffs point to language in the Complaint which alleges deliberate indifference or willful disregard to Minor Plaintiff's safety when claiming Defendants' conduct " . . . is outrageous and demonstrates a reckless indifference for the safety and wellbeing of Minor Plaintiff." Compl. ¶ 47.

At this stage in the litigation, the Court must construe all of Plaintiffs' well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Thus, assuming the truth of Plaintiffs' claims in the Complaint that the School District knowingly placed Minor Plaintiff into a situation which would increase his danger, the Court concludes that Plaintiffs have adequately pled a state-created danger claim against the School District Defendants. Therefore, the Court **DENIES** School District Defendants' Motion to Dismiss Count I of Plaintiff's Complaint.

> B. **Defendants' Motion to Dismiss Plaintiff's Claims Against Individual School District Defendants, Locke and Sylvester, Is Granted Because Defendants Are Entitled to Qualified Immunity.**

The doctrine of qualified immunity protects government officials performing discretionary functions from civil liability for constitutional violations if "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638. Qualified immunity "gives government officials

7

breathing room to make reasonable but mistaken judgments about open legal questions." *Checker Cab Philadelphia v. Philadelphia Parking Auth.*, 306 F. Supp. 3d 748, 752 (E.D. Pa. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In order for a government official to be held liable and qualified immunity not be applied, Plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis added).

In order to satisfy the first prong of qualified immunity analysis, the Court determines whether the facts alleged, viewed in the light most favorable to Plaintiffs, demonstrate that Defendants' conduct violated a statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds* by *Pearson v. Callahan*, 555 U.S. 223 (2009). In this case, the Court considers whether Defendants' actions violated Minor Plaintiff's due process rights through the state-created danger exception. Even if a violation of a constitutional right is found, "the next, sequential step is to ask whether the right was clearly established." *Id.* However, district courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129.

In determining the second prong of qualified immunity analysis, courts consider "whether the right allegedly violated—defined in terms of the 'particularized' factual context of that case—was a 'clearly established statutory or constitutional right[] of which a reasonable [officer] would have known,'" *Kedra v. Schroeter*, 876 F.3d 424, 435 (3d Cir. 2017) (quoting *Beers-*

8

*Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (2d Cir. 2001) and *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)). The Supreme Court has additionally clarified that a "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right" such that "existing precedent must have placed the statutory or constitutional question beyond debate." *Checker Cab Philadelphia*, 306 F. Supp. 3d at 752. (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). An inquiry into "whether the nature of particular conduct is clearly established" is "undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

School District Defendants argue that qualified immunity prevents Plaintiffs' § 1983 claims against individual Defendants Locke and Sylvester under the first prong of qualified immunity analysis because Plaintiffs' pleadings are devoid of any evidence of a constitutional violation. Defs.' Mot. Dismiss 23. Defendants claim there is no allegation that Locke and Sylvester were personally involved, that the harm was foreseeable, that they acted in willful disregard for the safety of Minor Plaintiff, nor that their individual actions "shocked the conscience." Defs.' Mot. Dismiss 23. Defendants also allege that Plaintiffs' claim fail under the second prong of the sovereign immunity analysis because no reasonable defendant would understand Defendants' alleged conduct to violate Minor Plaintiff's constitutional rights and that there is no applicable precedent to support the existence of the right Plaintiffs allege was violated. Defs.' Mot. Dismiss 23–24.

Plaintiffs argue that "[a]ny reasonable school official involved in decisions which risk exposing young students to toxic lead would have known that his or her conduct violated fundamental due process rights." Pl.'s Resp. to Defs.' Mot. Dismiss 15. Plaintiffs also claim that Defendants Locke and Sylvester's approval of "decisions which manifested a reckless

9

indifference to the health and safety of Watson Comly students[]" increased the likelihood that Minor Plaintiff would be exposed to toxic lead. Pl.'s Resp. to Defs.' Mot. Dismiss 15–16.

Even taking all of Plaintiff's assertions as true, Plaintiffs do not allege a viable exception to qualified immunity. Plaintiffs fail to provide specific factual allegations that Defendants Locke and Sylvester individually acted in "willful disregard" of Minor Plaintiff's safety. Plaintiffs do not allege that either Defendant Locke or Sylvester had knowledge of Minor Plaintiff's habits of placing non-foods into his mouth or took part in placing Minor Plaintiff under chipping paint. Plaintiffs' Complaint also fails to adequately allege that Defendants Locke and Sylvester acted in a way in which government officials would have known violated Minor Plaintiff's constitutional rights. Further, Plaintiffs have not presented analogous case law as precedent to support that Defendants Locke and Sylvester would have been aware of their wrongdoing, thus failing to allege a clearly established right under the second prong of the qualified immunity analysis. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Count I against Defendants Locke and Sylvester.

### C. Plaintiff's Negligence Claim Against Defendant Gruman Is Dismissed Because Plaintiffs Have Not Established that Defendant Gruman Owed A Duty of Care To Minor Plaintiff.

Ordinary negligence requires Plaintiffs to prove the following four elements: (1) the defendant owed a duty of care to the plaintiff; (2) that the defendant breached that duty; (3) the breach resulted in the plaintiff's injury; (4) the plaintiff suffered an actual loss or damage. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Id.*

It is well-settled that "in the absence of any provision in the lease, a landlord is under no obligation to repair the leased premises, to see to it that they are fit for rental or to keep the

premises in repair." *Lopez v. Gukenback*, 137 A.2d 771, 774 (Pa. 1958). It is also well-settled that "a tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenant knows or can ascertain by a reasonable inspection." *Id.* at 775. However, a landlord may be liable in situations "(a) where he conceals a dangerous condition of which he has knowledge and of which the tenant has no knowledge or cannot be expected to discover and (b) where he knows or should know of a dangerous condition and leases the premises for a purpose involving a 'public use' and has reason to believe the tenant will not first correct the condition." *Id.*

Under Pennsylvania law, "a property owner, absent *actual* notice of a hazardous condition on the premises, will not be liable to a tenant for injuries flowing from such a condition…" *Felton by Felton v. Spratley*, 640 A.2d 1358, 1362 (Pa. Super. 1994) (emphasis added).

> Generally, the application of the doctrine of constructive notice is the result of bad faith on the part of the party charged with notice. A person is charged with having constructive notice when he has knowledge of facts putting him upon inquiry. Once the duty to inquire is raised, the party is deemed to have such knowledge as he would have acquired by the exercise of ordinary intelligence and understanding.

*Id.* at 1362–63.  To hold a landlord accountable requires "a finding that 'inquiry' on the part of the landlord rose to the level of a 'duty', and would lead to the knowledge of a requisite fact by the exercise of ordinary diligence and understanding." *Id.* at 1363.  "[T]he liability of a landlord to a tenant premised on a negligence theory must be established by proof of some direct omission by the lessor of the performance of a duty which he/she owed to the lessee in order to make the landlord liable." *Id.*

Defendant Gruman argues that Plaintiffs have not alleged sufficient facts to support a negligence claim against Gruman as Minor Plaintiff's landlord. Defendant Gruman argues that

Plaintiffs' allegation that he "knew or should have known" about lead-based paint on the property that he rented to Minor Plaintiff's family is a legal conclusion which does not provide the necessary factual allegations to establish notice and create a duty of care between landlord and tenant. Defs.' Mot. Dismiss 7. Defendant Gruman also claims that Plaintiffs' do not allege any facts "from which a reasonable inference could be drawn that paint chips were in fact lead-based or dangerous." Defs.' Mot. Dismiss 8. Defendant Gurman additionally claims that Plaintiffs have failed to sufficiently allege causation. Defs.' Mot. Dismiss 9.

In response, Plaintiffs claim that they have pled sufficient factual allegations. Plaintiffs contend that notice does not need to be actual. Pl.'s Resp. to Defs.' Mot. Dismiss 6. Plaintiffs argue that according to *Reformed Church of the Ascension v. Hooven & Sons., Inc.*, 764 A.2d 1106 (Pa. Super. Ct.), constructive notice of chipping paint may suffice in place of actual notice. Pl.'s Resp. to Defs.' Mot. Dismiss 7. Plaintiffs further claim that other necessary information, such as the results of any lead tests or inspections, as well as findings of any experts on the issue of causation, are matters to be addressed in discovery. Pl.'s Resp. to Defs.' Mot. Dismiss 6–7. Plaintiffs argue that one may infer causation from the fact that Minor Plaintiff resided at the property, the property contained chipped and peeling paint, and Minor Plaintiff tested positive for lead exposure. Pl.'s Resp. to Defs.' Mot. Dismiss 7.

In reviewing the holding of *Felton* and its application in *Reformed Church*, the Court finds that actual notice of lead paint is required in order to impose a duty on Defendant Gruman as a landlord. Although Plaintiffs allege that Defendant Gruman's property "upon information and belief[] contained lead paint[,]" Plaintiffs fail to allege any lead toxicity testing of the property. Pl.'s Resp. 6. Plaintiffs' suggestion that causation of Minor Plaintiff's lead poisoning may be inferred simply by Minor Plaintiff testing positive for lead poisoning while residing at

Defendant's property with chipped paint is unreasonable, particularly when Minor Plaintiff has already been exposed to lead paint elsewhere on a regular basis. Therefore, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiffs' negligence claim against Defendant Gruman because Plaintiffs fail to allege facts which would create a necessary duty of care to hold Defendant Gruman liable for common law negligence.

### IV. CONCLUSION

For the foregoing reasons, the School District Defendants' Motion to Dismiss is **GRANTED IN PART** AND **DENIED IN PART**. Defendant Gruman's Motion to Dismiss is **GRANTED**. Plaintiffs' shall be able to proceed with the following counts:

(1) Count I against the School District of Philadelphia and Comly Elementary School; and

(2) Count III against the School District Defendants.